**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **CRESTVIEW FARM, L.L.C.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION _____ |
| § | |
| **ADOLFO CAMBIASO** § | |
| **AND LA DOLFINA, S.A.,** § | |
| § | |
| Defendants. § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

*To the Honorable United States District Judge:*

COMES NOW **Crestview Farm, L.L.C.** ("**Farm**"), Plaintiff, and files this Original Complaint showing as follows:

### I.   NATURE OF ACTION

1.   This is an action for breach of a written agreement entered between the parties in 2009 entitled "Horse Cloning Contract" (the "2009 Agreement").

2.   Farm is a Texas-based company engaged in business activities related to the sport of polo. These business activities include cloning polo ponies for sale. In 2009, Farm entered the 2009 Agreement with Defendant Cambiaso whereby Farm paid $1,000,000 for the right to extract tissue samples from four mares and create cloned foals; one foal of each mare was to be created for Cambiaso, and the remaining for Farm's ownership and benefit. In addition, the 2009 Agreement provided that Farm

would receive "complete and exclusive licensing rights" to the four mares and their cloned foals.

3. Farm recently learned that Cambiaso breached the 2009 Agreement. An unrelated third-party has established that he or his company, and not Cambiaso, owns one of the mares at issue named Small Person; in short, Cambiaso sold tissue samples and licensing rights of a horse it did not own. In addition, Cambiaso never produced the final mare, named Nona, for tissue extraction, providing various excuses for its unavailability; on the other hand, Farm recently learned that Cambiaso used that final mare's tissue samples to clone the mare for Defendants. Further, upon information and belief, Cambiaso has cloned another mare that Farm paid rights to clone and own such cloned foals, named Cuartetera, at least twice and sold those clones for profit. Each of these acts violates the 2009 Agreement with Farm.

4. Finally, Cambiaso has recently adopted the position that the 2009 Agreement is unenforceable because, he claims, the four mares at issue were owned by Defendant La Dolfina, S.A., Cambiaso (notwithstanding Cambiaso's representation in the 2009 Agreement that he is the owner of the mares). But inasmuch as Defendant owns, operates and acts as an agent of La Dolfina, that assertion does not affect Farm's ownership rights. Accordingly, in addition to its claim for breach of contract, Farm further seeks a declaratory judgment as to its ownership and licensing rights to the mares and cloned foals at issue.

## II.   PARTIES

5. Farm is a Texas limited liability company with its principal place of business in this District, at 4770 Bryant Irvin Court, Suite 400, Fort Worth, Texas 76107.

6. Defendant Cambiaso is a citizen of Argentina, residing at Camino Del 80 Altura Ruta 205, Alejandro Petión, Province of Buenos Aires, Argentina. Farm intends to serve Mr. Cambiaso in accordance with the provisions of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Criminal Matters, or through other appropriate service, if available.

7. Defendant La Dolfina, S.A. is an Argentine corporation headquartered at Honduras 5839, Ciudad Autonoma de Buenos Aires, Province of Buenos Aires, Argentina, Farm intends to serve La Dolfina in accordance with the provisions of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Criminal Matters, or through other appropriate service, if available.

## III.   JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a)(2), as this is a lawsuit by a Texas citizen against a citizen of a foreign state, and it involves rights and interests with a value greater than $75,000.00.

9. The Court has personal jurisdiction over Cambiaso because he negotiated the underlying agreement with a Texas resident over two to three months, directing offers and counter-offers to Farm and its Manager in Fort Worth, Texas; he requested Farm to sign the final agreement, which its Manager did while in Texas; the 2009 Agreement

contemplated that it would be performed, in part, in Texas; and, Cambiaso visited Texas on at least one occasion to review foals cloned pursuant to the 2009 Agreement. Moreover, as Cambiaso is an owner and representative of Defendant La Dolfina, which he now claims is the owner of the mares and property at issue, Cambiaso's contacts with Texas inure to La Dolfina, under principles of actual and/or apparent authority, for all purposes with regard to the transaction and claims at issue.

10. Venue is proper in this District under 28 U.S.C. §1391 as a substantial portion of the events that give rise to this action occurred here.

### IV.    FACTUAL BACKGROUND

11. Farm is a Texas company conducting business primarily in the polo industry. Cloning polo ponies for sale to third parties is among Farm's areas of operation.

12. Defendant Cambiaso is an Argentinian polo player. In the course of his work as such, Cambiaso claimed to own a stock of certain mares that had a proven history as polo ponies. In addition, Cambiaso and his wife are 100% owners of Defendant La Dolfina, an Argentine company engaged in breeding, raising, and training polo ponies, competing in polo events, and other aspects related to the sport.

13. Cambiaso and Farm's Manager, Alan Meeker, met through their shared interest in polo. That commonality led to a close friendship between Meeker and Cambiaso, as well as a desire to use their respective knowledge of polo and polo ponies in Farm's business venture. Toward that end, Meeker and Cambiaso began exploring the

potential for Farm to clone some of Cambiaso's proven polo ponies for sale by Farm within the sport's community.

14.     Following months of discussion, Farm and Cambiaso entered the 2009 Agreement.  Per that contract, Farm was granted the right to select four of Cambiaso's mares for cloning; specifically, it was granted the right to extract tissue samples from each of the four mares in exchange for paying $250,000 a piece, for a total payment of $1,000,000.   Farm could then clone and own two editions of each mare, with a total of 10 cloned foals in each edition.  Finally, the 2009 Agreement provided that Farm received "complete and exclusive licensing rights in and to the mares and all cloned foals."

15.     Thereafter, Farm paid Cambiaso $1,000,000 and selected the four mares from which it desired to obtain tissue samples.  Those mares were (a) Cuartetera, (b) Lapa, (c) Small Person, and (d) Nona.  Farm has since extracted tissue samples from Cuartetera, Lapa, and Small Person, worked to develop cloned foals of each, and market its cloned foals for sale.[1]  While it has successfully cloned foals within the first edition of each of these mares, it has not yet begun the second edition, except for Cuartetera, of which Farm has successfully cloned and sold three such clones.

16.     Recently, Farm learned that Cambiaso does not own Small Person, nor did he at any time relevant to 2009 Agreement.  In particular, the actual owner, a third-party

---

[1] The 2009 Agreement also provided that Farm would provide one cloned foal of each mare to Cambiaso.  Farm has abided with this provision, providing Cambiaso a clone of Cuartetera, Lapa and Small Person.

unaffiliated with either Defendant, reached out to Farm to discuss the matter, providing appropriate paperwork that documented his ownership. While Farm had previously cloned six foals from Small Person, it has been deprived of its right to the four remaining in the first edition and all of those in the second edition.

17. In addition, Cambiaso never produced Nona for tissue extraction. Though Farm repeatedly sought to obtain the samples, Cambiaso consistently demurred, claiming at various times that Nona was unavailable or could not provide healthy tissue due to age or illness. Due to the close business and personal relationships that had developed among Cambiaso and Farm's Manager, Farm accepted these statements, allowing Cambiaso to keep the $250,000 paid with the understanding that Farm's rights to extract tissue samples and clone Nona for its own account would be preserved. But, Farm recently learned that Cambiaso extracted tissue from Nona and cloned at least two foals for Defendants. This not only belies Cambiaso's repeated excuses for withholding Nona from Farm, but contravenes the exclusive licensing rights for which Farm contracted and paid.

18. Additionally, and on information and belief, Cambiaso has allowed third parties to develop cloned foals of Cuartetera and sell them to such party on two separate occasions. This also breaches the complete and exclusive licensing rights in Cuartetera that Defendant conveyed to Farm in the 2009 Agreement.

19. Despite his various breaches, Cambiaso nonetheless seeks to intrude on Farm's exercise of its rights under the 2009 Agreement. In particular, Farm began implanting its clone embryos derived from Cuartetera into surrogate mares in early 2019.

Such clone embryos Farm owns and has had in cryogenic storage since 2010. Ultimately, three foals were born on April 4, 2020, April 21, 2020, and June 2, 2020, respectively. Farm has since sold the foals to a third-party. But on December 1, 2020, Cambiaso and La Dolfina informed Farm, through an agent, that they dispute Farm's ownership to, and right to sell, the Cuartetera foals. In particular, Defendants claim that, when the 2009 Agreement was entered, the mares at issue were owned by La Dolfina; therefore, say Defendants, the 2009 Agreement gave Farm no rights at all. Given that Cambiaso founded, owns and operates La Dolfina, their claims ring hollow. Further, in light of La Dolfina's direct involvement in extracting the mares' tissues for cloning for Farm, such Defendant has ratified and approved that 2009 Agreement. But to ensure its rights, Farm files this lawsuit seeking a declaration of its ownership, transfer and licensing rights under the 2009 Agreement.

## V. CAUSES OF ACTION

### A. BREACH OF CONTRACT

20. All prior paragraphs are incorporated herein by reference.

21. The 2009 Agreement is a valid and enforceable contract among Farm, Cambiaso and/or La Dolfina. Farm has performed, as it has paid the $250,000 fee with respect to each mare in order to extract tissue samples, developed cloned foals, and marketed those foals for sale for its own account. However, Defendants breached the 2009 Agreement by (a) providing tissues samples of Small Person, a mare Defendants did not own; (b) failing and refusing to provide samples of Nona; and (c) cloning Nona for their own benefit. These breaches have caused harm, as they have deprived Farm of (a)

its right to the final four of the first edition of Small Person cloned foals; (b) its out-of-pocket costs to clone the first six of the first edition of Small Person cloned foals; (c) its right to all of the second edition of Small Person cloned foals; (d) its right regarding both the first and second edition of the Nona cloned foals; and (e) its complete and exclusive licensing rights in Small Person, Nona and their cloned foals.

22. In addition, on information and belief, Defendants have allowed a third-party to develop and retain ownership of cloned foals of Cuartetera on two separate occasions. If true, then such actions are a direct breach of Farm's complete and exclusive licensing rights in Cuartetera, which undermines and damages those rights.

23. Due to the breaches of contract described above, Farm has been injured in an amount above the minimum jurisdictional limits of this Court, and accordingly seeks recovery of its reliance and/or expectancy damages, as appropriate, and all resulting actual, special and/or consequential damages.

### B. DECLARATORY JUDGMENT

24. All prior paragraphs are incorporated herein by reference.

25. Farm's claim to the rights to develop and sell cloned foals of Cuartetera pursuant to the 2009 Agreement is a real, actual, and justiciable controversy, inasmuch as Defendant Cambiaso has recently claimed that such foals were not Farm's to sell. Instead, Cambiaso and his company, La Dolfina, claim that La Dolfina owned the mares in 2009, so that Cambiaso had no rights to convey under the contract.

26. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, Farm requests that the Court declare Farm, Cambiaso and/or La Dolfina's

respective rights and obligations under the 2009 Agreement. Specifically, Farm seeks a declaration that, by virtue of conveying $1,000,000 and one cloned foal to Defendants in exchange for, inter alia, tissue samples for the four mares, Farm owns the remaining cloned foals in its custody and to be developed; Farm had and has the right to sell any such cloned foals to third parties; and/or, Farm's "complete and exclusive licensing rights" are unrestricted, with no limitation on assignment, so that Farm may sell and assign such rights in its cloned foals to third-parties.

27. Additionally, Farm requests that the Court declare that La Dolfina is bound by and/or estopped to deny effects of the 2009 Agreement with respect to the ownership and licensing rights conveyed to Farm, given Cambiaso's actual and apparent authority to act on La Dolfina's behalf. Alternatively, and also given Cambiaso's ownership and agency capacities for La Dolfina, that La Dolfina has ratified the 2009 Agreement and is bound by it. Such declaration is proper given that La Dolfina's owner and principal, Cambiaso, negotiated, signed and accepted the benefits of that contract on Defendants' behalf.

## VI.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Crestview Farm, L.L.C. prays that Defendants Cambiaso and La Dolfina, S.A. be cited to appear and answer and that, following trial, be granted the following relief:

1. All of its actual, special and consequential damages;

2. A judicial declaration that:

   a. Farm owns the foals cloned from Cuartetera under the 2009 Agreement;

   b. Farm has the right to sell such cloned foals to third parties; and,

   c. Because Farm's "complete and exclusive licensing rights" to the cloned foals are unrestricted, Farm may sell and assign such rights to third-parties.

 3. All reasonable and necessary attorneys' fees incurred in this matter; and

 4. Such other and further relief, both at law and in equity, to which it may show itself justly entitled.

Dated: December 3, 2020

            Respectfully submitted,

            */s/ Bill Warren*
            Bill Warren
            State Bar No. 00786331
            David E. Keltner
            State Bar No. 11249500
            KELLY HART & HALLMAN LLP
            201 Main Street, Suite 2500
            Fort Worth, Texas 76102
            Telephone: (817) 332-2500
            Facsimile: (817) 878-9280

            **COUNSEL FOR**
            **CRESTVIEW FARM, L.L.C.**